# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

HASKELL/DAVIS JOINT VENTURE,
a joint venture consisting of Haskell
Corporation and Davis Constructors
and Engineers, Inc.,

          Plaintiff,

     v.

TAKRAF USA, INC., and NORTH
AMERICAN SPECIALTY
INSURANCE COMPANY,

          Defendants.

Case No. 3:20-cv-00234-SLG

## ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court at Docket 36 is Defendants' *Motion for Partial Summary Judgment*. The motion is opposed.[1] Oral argument was not requested and was not necessary for the Court's decision. For the reasons set forth in this order, Defendants' motion is granted in part and denied in part.

## BACKGROUND

This dispute relates to a Material Handling System ("System") that Defendant TAKRAF USA, Inc., ("TAKRAF") sold to Plaintiff Haskell/Davis Joint Venture ("HDJV") as part of a construction project at the University of Alaska

---

[1] Docket 46 (Opposition); Docket 53 (Reply).

Fairbanks ("UAF"). Many of the relevant undisputed facts in this case are set out in the Court's previous order at Docket 55 and are not repeated here.

The parties' contractual agreement is set out in a Purchase Order that contains two provisions relevant to this motion. First, the Purchase Order contains the following clause waiving both parties' claims for consequential damages:

> Seller and Buyer hereby waive any claim, other than the [liquidated damages] provided by this agreement, in contract or in tort, for any indirect, special or consequential damages, including but not limited to lost revenues, lost financing, loss or delay in production, increased costs of operations, reservoir damage and other type of consequential damages in connection with any claim arising under or in connection with this Purchase Order.[2]

Second, the Purchase Order contains a "Backcharge Procedure" that the parties agreed to use to remedy any defaults in TAKRAF's performance. The provision states: "If a default in performance by Seller or its sub-suppliers causes Buyer to incur costs to correct the default, Buyer and Seller agree to utilize [TAKRAF]'s attached Backcharge Procedure to document the default and the remedy."[3] The Purchase Order defines a "backcharge" as follows:

> A backcharge is a cost sustained by the Buyer and chargeable to the Seller for performance of work by the Buyer or by others on behalf of the Buyer which is the responsibility of the Seller. Without limitation and by way of example only, backcharges may result from:

---

[2] Docket 48-3 at 17, § 10(G). The Purchase Order also provides that "[l]iquidated damages . . . for seller's failure to deliver equipment by the date or dates specified in this purchase order shall be assessed at the rate of $16,000 per day," with a "total aggregate maximum Liquidated Damage liability" of 5 percent of the Purchase Order price. Docket 48-3 at 11–12, §§ 4(C) & (D).

[3] Docket 48-3 at 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 2 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 2 of 21

> > i. Work performed by Buyer or by others on behalf of Buyer, to correct Seller's non-compliance with the Purchase Order, acts of omission, or negligence.
> >
> > ii. Work performed by Buyer or by others on behalf of the Buyer, to correct warranty issues that have been properly tendered to the Seller in a timely manner but have not been cured.
> >
> > iii. The backcharge procedure shall be as stipulated in the Purchase Order attachments to. [*sic*][4]

The Backcharge Procedure attached to the Purchase Order provides that TAKRAF "reserves the right to self-correct" any reported problems with the System, and that if it self-corrects a problem, TAKRAF would only be responsible for its own costs.[5] The Backcharge Procedure further specifies that if TAKRAF requested the buyer to correct a problem with the System instead of self-correcting it, TAKRAF would reimburse the buyer for "direct material and labor costs involved with the re-work plus a Ten Percent 10% fee for administration, overhead and profit," but that "[i]n no case" will TAKRAF be liable for "overtime rates, [or] special, indirect, or consequential damage costs, including the loss of construction efficiency or construction productivity."[6] The Backcharge Procedure also provides that the parties would settle all backcharges within 30 days of their presentation and that "[u]nresolved backcharges will be escalated per the dispute resolution clause in the Purchase Order."[7]

---

[4] Docket 48-3 at 13.

[5] Docket 48-4 at 3, ¶ 5.

[6] Docket 48-4 at 3, ¶ 6.

[7] Docket 48-4 at 3, ¶¶ 11, 13. This is apparently a reference to Section 7 of the Purchase

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 3 of 21

The Material Handling System was delivered in late 2016. After installing and testing the System, HDJV concluded that it did not meet project specifications. HDJV concluded that, "[a]mong other things, the Material Handling System was unable to meet minimum throughput requirements, had undersized and failing parts, and allowed excessive and dangerous amounts of coal dust and coal to spill and/or escape the system."[8] HDJV notified TAKRAF of these problems in October 2018, and it delivered TAKRAF a formal notice of breach in June 2019.[9] In April 2020, HDJV delivered TAKRAF a backcharge notice advising it of the extra costs it had incurred up to that date.[10] HDJV also provided notice of TAKRAF's alleged breach to Defendant North American Specialty Insurance Company ("NASIC"), which had provided the bond for TAKRAF's performance.[11]

On September 22, 2020, HDJV filed the present suit against TAKRAF and NASIC under this Court's diversity jurisdiction. HDJV's complaint alleged breach of contract and breach of the implied covenant of good faith and fair dealing (Claim 1), breach of express warranty (Claim 2), breach of UCC warranty

---

Order's General Conditions. *See* Docket 48-3 at 13–14. However, the contract appears to have no escalation clause.

[8] Docket 1 at 5, ¶ 13.

[9] Docket 1 at 5, ¶ 14.

[10] HDJV's Complaint alleges that it submitted a backcharge to TAKRAF and that TAKRAF refused to accept it. Docket 1 at 5, ¶¶ 15–16. TAKRAF admits that HDJV submitted the backcharge, but it denies any related refusal or breach of contract. Docket 6 at 7–8. TAKRAF has provided a copy of the backcharge notice in question. *See* Docket 38-7 at 4–9.

[11] Docket 6 at 7–8, ¶¶ 14–15.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 4 of 21

(Claim 3), and a claim against the performance bond (Claim 4).[12]  The parties later stipulated to dismissal of the breach of warranty claims (Claims 2 and 3) with prejudice.[13]  On the remaining two claims, Claims 1 and 4, HDJV seeks compensatory damages for TAKRAF's alleged breach of contract, an order declaring the judgment recoverable against NASIC's bond, and an award of its fees and costs.[14]

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15]

## DISCUSSION

TAKRAF moves for partial summary judgment on the ground that the Purchase Order's exclusion of consequential damages bars "every category of damages" HDJV's complaint seeks.[16]  TAKRAF asserts generally that "[a]ll of the damages sought by HDJV in this lawsuit are outside of what they contracted with TAKRAF to obtain in the Purchase Order.  Thus, they are consequential, and not direct, damages."[17]  TAKRAF reasons that "[a]ll the claimed consequential

---

[12] Docket 1 at 7–10, ¶¶ 22–45.

[13] Docket 39.

[14] Docket 1 at 11–12.

[15] Fed. R. Civ. P. 56(a).

[16] Docket 36 at 14.

[17] Docket 36 at 10–11.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 5 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 5 of 21

damages arose *after* TAKRAF performed under the Purchase Order and involve aspects of the System that are *outside* the scope of the Purchase Order," because "TAKRAF's responsibilities under the Purchase Order were strictly limited to the final design, manufacture, and delivery of the System."[18]

HDJV responds generally that none of its claimed damages are consequential, but rather are all direct damages that "would give HDJV the benefit of what TAKRAF was supposed to give – a system that meets the specifications."[19] HDJV has not asserted that the Purchase Order's consequential damages exclusion is unconscionable.

As TAKRAF points out, HDJV's Complaint does not specify its damages in detail. In its breach of contract and good faith claim (Claim 1), HDJV claims "not less than $1,371,134" in damages.[20] In its claim against the bond (Claim 4), HDJV claims damages "up to the [bond's] principal amount of $4,035,961.00."[21] The Complaint provides no further details regarding damages. Accordingly, TAKRAF's motion bases its analysis of HDJV's claimed damages primarily on: (1) a "TAKRAF Complaint Cost Summary" HDJV's counsel sent TAKRAF in January 2022;[22] and (2) the deposition testimony of HDJV vice president Terry Corrigan.[23] The

---

[18] Docket 36 at 11.

[19] Docket 46 at 2.

[20] Docket 1 at 7, ¶ 28.

[21] Docket 1 at 10, ¶ 45.

[22] Docket 38-6 (Ex. A-6).

[23] Docket 38-3 (Ex. A-3).

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 6 of 21

"TAKRAF Complaint Cost Summary," which HDJV's counsel described as a "spreadsheet of HDJV's damages,"[24] reads as follows:[25]

## TAKRAF COMPLAINT COST SUMMARY

| ITEM | DESCRIPTION | COST |
|---|---|---|
| Staff Management & non-manual Labor | October 2020 thru December 2021 | $ 336,400.62 |
| Pipefitter & Laborer Mods & Enhancement to Coal Handling | October 2020 thru December 2021 | $ 200,774.43 |
| Material for Modifications & ST&C for Clean up | October 2020 thru December 2021 | $ 40,233.87 |
| Laborers Labor & Clean Up (Oct 2020 - Dec 2021) | October 2020 thru December 2021 | $ 388,708.12 |
| Laborers Labor & Clean Up (Oct 2019 - Dec 2020) | October 2019 thru December 2020 | $ 676,824.00 |
| SUBTOTAL | | $ 1,642,941.04 |
| | | |
| SUBTOTAL | | $ 1,642,941.04 |
| Overhead @ 10% | | $ 164,294.10 |
| SUBTOTAL | | $ 1,807,235.14 |
| Profit @ 7% | | $ 126,506.46 |
| SUBTOTAL | | $ 1,933,741.60 |
| Bond 1.5% | | $ 29,006.12 |
| Potential UAF Costs | | $ 600,000.00 |
| Estimated Legal & Other (This figure is expected to increase) | | $ 120,000.00 |
| GRAND TOTAL | | $ 2,682,747.73 |

TAKRAF's motion groups these damages into:

A. **"Operation Damages"** ($1,602,707.17), comprising:

1. "Staff Management & non-manual Labor" ($336,400.62);

---

[24] Docket 38-6 at 1.

[25] Docket 38-6 at 2.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 7 of 21

2. "Laborers Labor & Clean Up" ($1,065,532.12 for combined 2019-20 and 2020-21); and

3. "Pipefitter & Laborer Mods & Enhancement to Coal Handling" ($200,774.43)

B. **"Production Damages"** ($40,233.87), comprising HDJV's spreadsheet's "Material for Modifications & ST&C for Clean up";

C. **"Profit Damages"** ($126,506.46), comprising HDJV's spreadsheet's "Profit @ 7%"; and

D. **"Potential Future Damages"** ($793,300.22), comprising:

1. "Overhead @ 10%" ($164,294.10);

2. "Bond 1.5%" ($29,006.12); and

3. "Potential UAF Costs" ($600,000.00).[26]

TAKRAF asserts that the Purchase Order bars all four categories of damages because they are all consequential damages.[27] HDJV maintains that each of these categories of damages are direct damages, not consequential damages, because HDJV incurred them while attempting to "remedy TAKRAF's defective system."[28]

---

[26] Docket 36 at 6–8. TAKRAF does not include HDJV's "Estimated Legal & Other" costs ($120,000) in its argument.

[27] Docket 36 at 13–14.

[28] Docket 46 at 14–18.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 8 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 8 of 21

Under Alaska law,[29] interpreting the meaning of a contract is usually a question of law for the court.[30] A court's goal "is to 'give effect to the reasonable expectations of the parties.'"[31] To determine the parties' reasonable expectations, a court looks to "the language of the disputed provision and other provisions [of the contract], relevant extrinsic evidence, and case law interpreting similar provisions."[32]

Under Chapter 2 of the Alaska Commercial Code, which adopts Article 2 of the Uniform Commercial Code ("UCC"),[33] buyers may recover consequential damages "[i]n a proper case."[34] Relevant here, the Code defines consequential damages to include "loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and that

---

[29] Because Plaintiffs' claims arise under state law, the Court applies Alaska substantive law to them. *See, e.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("Under the rule of *Erie* [*Railroad*] *Co. v. Tompkins*, 'federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" (citation omitted) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))); *see also* Docket 38-2 at 9, § 10(A) (specifying that the Purchase Order "shall be interpreted under the laws of the State of Alaska").

[30] *Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004). Under Alaska law, contractual interpretation only becomes a question of fact "when the parties present extrinsic evidence to clarify a contract's meaning, when this evidence points towards conflicting interpretations of the contract, and when the contract itself is reasonably susceptible of either meaning." *Id.* (quoting *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 23 (Alaska 1997)).

[31] *Graham v. Mun. of Anchorage*, 446 P.3d 349, 352 (Alaska 2019) (quoting *Stepanov v. Homer Elec. Ass'n*, 814 P.2d 731, 734 (Alaska 1991)).

[32] *Id.* (quoting *Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc.*, 377 P.3d 959, 975 (Alaska 2016)).

[33] *See Bendix Home Sys., Inc. v. Jessop*, 644 P.2d 843, 845 & n.8 (Alaska 1982).

[34] Alaska Stat. § 45.02.714(c).

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 9 of 21

could not reasonably be prevented by cover or otherwise."[35]  The Code allows parties to contractually limit or exclude consequential damages "unless the limitation or exclusion is unconscionable."[36]  The District of Alaska has enforced such consequential damages limitations.[37]

Common examples of consequential damages include lost profits, down or idle time, increased insurance costs, interest or finance charges, loss of use of goods, and increased overhead, labor, and equipment expenses.[38]  However, in this case, the consequential damages exclusion clause must be read in the context of the parties' entire agreement, including the Purchase Order's Backcharge Procedure.[39]  The Backcharge Procedure provides that if TAKRAF chooses not to self-correct a deficiency and HDJV is required to perform work to correct TAKRAF's non-compliance with the Purchase Order, TAKRAF will reimburse HDJV for HDJV's "direct material and labor costs involved with the re-work plus a

---

[35] Alaska Stat. § 45.02.715(b)(1).

[36] Alaska Stat. § 45.02.719(c).

[37] *Anderson v. City of Seward*, 475 F. Supp. 3d 986, 991–92 (D. Alaska 2020). *Anderson* was an admiralty law case involving a contract for services, but federal admiralty law applies the same "basic principles [of] the common law of contracts," *Clevo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013), and the *Anderson* court's analysis of the consequential damages exclusion at issue cited Alaska and Washington's versions of the UCC limitation provision, recognizing that "the UCC is a source of the federal common law." *Id.* at 992 n.29.

[38] 67A Am. Jur. 2d *Sales* §§ 1136, 1141–42, 1147, 1150 & 1161–68 (Aug. 2022 update).

[39] Some courts have recognized that the language in parties' contracts can implicitly alter the standard UCC common law definition of consequential damages. *See, e.g.*, *Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 459 (S.D.N.Y. 1976) (explaining that by listing examples of consequential damages, "[t]he parties have gone a long way in defining the scope of consequential damages in the contract itself"); *see also, e.g.*, *Am. Tel. & Tel. Co. v. N.Y.C. Hum. Res. Admin.*, 833 F. Supp. 962, 990 n.22 (S.D.N.Y. 1993) ("[P]arties are free to provide the definition of consequential damages in the contract . . . .").

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al*.
Order on Defs.' Mot. for Partial Summ. J.
Page 10 of 21

Ten Percent 10% fee for administration, overhead and profit," although the reimbursement will not include "overtime rates, [or] special, indirect, or consequential damage costs."[40] This provision clearly indicates that the parties did not intend "direct material and labor costs" incurred to correct a deficiency to be nonrecoverable damages in an action for breach of contract brought by HDJV. It also demonstrates that the parties did not intend "administration, overhead and profit" costs to be nonrecoverable damages, as long as such costs are limited to 10 percent of HDJV's "direct material and labor costs involved with [a] re-work."

With this contractual framework, the Court now analyzes the damages at issue in TAKRAF's motion. Because HDJV's opposition memorandum did not object to TAKRAF's grouping of HDJV's damages into "Operation Damages," "Production Damages," "Profit Damages," and "Potential Future Damages," the Court organizes its analysis around that grouping.

A. "Operation Damages"

TAKRAF asserts that HDJV's "Operation Damages" are barred as consequential damages because, as Haskell/Davis "repeatedly admit[ted]" in depositions, the Operations Damages are for "increased costs of operations." TAKRAF points to the deposition testimony of HDJV's vice president and managing member Terry Corrigan, who testified that HDJV's claimed damages for increased labor costs were due to "the increased cost of operating [the] facility,

---

[40] Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 11 of 21

including the clean-up and the operation and supervision and site management of the system."[41]  TAKRAF emphasizes that it "was not responsible [for] installing, commissioning, starting-up, operating, cleaning, maintaining, adjusting, or enhancing the System."[42]

HDJV maintains that its "Operation Damages" are not consequential because HDJV incurred them to "replace[] the defendant's performance." According to HDJV, these damages are direct damages because TAKRAF's delivery of a "defective system" could not satisfy the project's "two key requirements" of moving 100 tons of coal per hour without spillage.  HDJV emphasizes that UAF has not accepted the system TAKRAF supplied, and it asserts that "costly and labor intensive" modifications will be necessary to make it acceptable to UAF.[43]

In reply, TAKRAF reasserts its position that HDJV's damages are "classic consequential damages under the controlling caselaw."  TAKRAF asserts that HDJV's claim that its increased labor costs for cleaning up spillage and fixing blockages in the system are direct damages is "akin to arguing that bailing water from a leaky boat is fixing the boat."  TAKRAF asserts that "HDJV's labor to clean and shovel coal, for over three years, only addresses the *consequences* of the

---

[41] Docket 38-3 at 8.

[42] Docket 36 at 11.

[43] Docket 46 at 14–18.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 12 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 12 of 21

allegedly defectively designed equipment and has absolutely nothing to do with directly remedying or addressing the source of the leak."[44]

In the Court's view, the Purchase Order's consequential damages exclusion does not bar HDJV's "Operation Damages" to the extent that they represent HDJV's "direct material and labor costs" involved with correcting aspects of the System that failed to meet required specifications. In most cases, damages for increased overhead and "extra labor, equipment, or other related expense[s] incurred by the buyer in the effort to cure a defect" are consequential damages.[45] But the Backcharge Procedure clearly indicates that HDJV may recover its "direct material and [non-overtime] labor" costs in "re-work[ing]" a problem caused by TAKRAF's non-compliance with the contract without running afoul of the consequential damages exclusion.[46] If, as HDJV alleges, TAKRAF failed to design and build the Material Handling System to the specifications incorporated in the Purchase Order, then the costs HDJV incurred in attempting to make the System acceptable to UAF would appear to constitute costs incurred for "[w]ork performed by Buyer . . . to correct Seller's non-compliance with the Purchase Order . . . [or] to correct warranty issues that have been properly tendered to the Seller in a timely

---

[44] Docket 53 at 7–10.

[45] *See, e.g.*, 67A Am. Jur. 2d *Sales* § 1150 (Aug. 2022 update).

[46] Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 13 of 21

Case 3:20-cv-00234-SLG    Document 69    Filed 10/28/22    Page 13 of 21

manner but have not been cured." The Backcharge Procedure expressly made such charges recoverable.[47]

The backcharge provision would be largely meaningless if the consequential damages exclusion prevented HDJV from claiming such damages. For that reason, interpreting the exclusion to bar all costs HDJV incurred while trying to "correct [TAKRAF]'s noncompliance" would appear to contravene the well-established principle of Alaska law that a contract "should be interpreted to give effect, if possible, to all of its provisions."[48] Accordingly, the Court concludes that those portions of HDJV's claimed "Operation Damages" representing "direct material and [non-overtime] labor costs" incurred in correcting aspects of the System that did not meet project specifications are recoverable under the Backcharge Procedure and are not barred by the Purchase Order's consequential damages exclusion.[49]

---

[47] Docket 48-3 at 13, § 6(E)(i)-(ii).

[48] *Peterson v. Wirum*, 625 P.2d 866, 872 n.11 (Alaska 1981).

[49] From the parties' filings, it is not clear to the Court what portions of the "Operation Damages" listed in HDJV's damages spreadsheet constitute "direct material and labor costs" incurred in attempting to correct aspects of the System that allegedly failed to meet the required specifications. The Court disagrees with TAKRAF's assertion that Terry Corrigan "repeatedly stated" in his deposition that this category was solely for "operating the System." In the excerpts TAKRAF filed with the Court, Corrigan's testimony does not address the nature of the "Pipefitter & Laborer Mods & Enhancement to Coal Handling" costs. Nor did Corrigan explain whether these damages include the nearly $50,000 in backcharges HDJV submitted to TAKRAF, Docket 38-7 at 4–5, which appear to be distinct from the potential future costs HDJV estimated. *See* Docket 38-3 at 3. Determining if these costs were "direct material and labor costs" incurred to correct the System's alleged failure to meet specifications—and, if so, their respective amounts—will be a question of fact for the factfinder.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 14 of 21

*B. Production Damages*

Neither party clearly explains what HDJV's "Production Damages" represent. These damages are listed in HDJV's spreadsheet as "Material for Modifications & ST&C for Clean up," totaling $40,233.87. TAKRAF simply asserts that the damages are barred as consequential damages because they "are for additions and modifications to the System that were not included in the original Purchase Order" and "were in addition to what was originally ordered."[50] HDJV simply maintains that the "Production Damages" are direct damages because they represent the costs of "modifications [that] were made in an attempt to reduce the spillage and/or increase the throughput capacity [of the System] – both of which were a direct result of TAKRAF's breach."[51]

The lack of detailed information regarding these damages makes the Court unable to determine their precise nature. Because the Court is uncertain what these damages represent, the Court cannot say whether they fall within the consequential damages exclusion clause or the backcharge provision. The Court therefore concludes that TAKRAF has not met its summary judgment burden regarding these damages.

---

[50] Docket 36 at 12.

[51] Docket 46 at 17.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 15 of 21

*C. Profit Damages*

TAKRAF asserts that HDJV's "Profit Damages" are barred as consequential damages because they "are drawn from lost revenues, which are consequential by definition and were also expressly waived in the Purchase Order."[52] HDJV maintains that these "Profit Damages" are "not necessarily 'profit', but rather overheard costs necessary to run a project."[53]

The Purchase Order's exclusion clearly bars HDJV's "Profit Damages" as a separate category of damages. HDJV's damages spreadsheet lists an entry for "Overhead @ 10%", comprising $164,294.10, immediately above the "Profit @ 7%" entry, which comprises $126,506.46.[54] As previously explained, the Backcharge Procedure permits HDJV to recover a fee for its "administration, overhead and profit" costs. This fee is to comprise 10 percent of HDJV's "direct material and labor costs involved with the re-work" of a problem caused by TAKRAF's non-compliance with the contract which TAKRAF does not self-correct.[55] By the Backcharge Procedure's plain language, this 10 percent fee for "administration, overhead and profit" already includes recovery for "profit." Thus, because HDJV already claims a 10 percent fee for "Overhead @ 10%" in this case,

---

[52] Docket 36 at 12.

[53] Docket 46 at 17.

[54] Docket 38-6 at 2.

[55] Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 16 of 21

its additional claim for "Profit @ 7%" is duplicative of that claim and cannot be separately recovered due to the consequential damages exclusion.

### D. Potential Future Damages

TAKRAF asserts that HDJV's "Potential Future Damages" are barred as consequential damages because they are "entirely speculative, hypothetical, remote, and/or contingent."[56] HDJV maintains that the uncertain or speculative nature of these damages is irrelevant to whether the Purchase Order's exclusion bars them. HDJV asserts that it should be allowed to prove these damages at trial.[57]

TAKRAF's "Potential Future Damages" is comprised of three entries: "Overhead @ 10%"; "Bond 1.5%"; and "Potential UAF Costs."[58] In his deposition, Terry Corrigan described "Overhead @ 10%" to be HDJV's "corporate overhead" and "Bond 1.5%" to be part of HDJV's own payment and performance bonds.[59] Corrigan described "Potential UAF Costs" to be HDJV's estimate of the cost it would take for HDJV to make the System acceptable to UAF, admitting that the figure was "a shot in the dark really."[60]

---

[56] Docket 36 at 11–12.

[57] Docket 46 at 17–18.

[58] Docket 38-6 at 2.

[59] Docket 38-3 at 8–9.

[60] Docket 38-3 at 3.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 17 of 21

Case 3:20-cv-00234-SLG    Document 69    Filed 10/28/22    Page 17 of 21

As HDJV correctly observes, whether HDJV's "Potential Future Damages" are remote or speculative is irrelevant to whether the Purchase Order's consequential damages exclusion bars them. Under Alaska law, "[t]he rule against recovery of uncertain damages is . . . generally directed against uncertainty with respect to the cause of rather than the extent of damages."[61] This rule applies to both direct and consequential damages.[62] Thus, whether HDJV's "Potential Future Damages" are too remote or speculative is not relevant to TAKRAF's present motion. Instead, the question is whether the Purchase Order provides for these damages or excludes them.

First, the "Overhead @ 10%" costs do not appear to be future costs at all. Rather, as noted above, the Purchase Order's Backcharge Procedure expressly provides for "a Ten Percent 10% fee for administration, overhead, and profit" for costs the buyer incurred in correcting a problem with the System that the seller chose not to self-correct.[63] The "Overhead @ 10%" figure HDJV lists in its spreadsheet, $164,294.10, is exactly 10 percent of its subtotal of $1,642,941.04, which is HDJV's combined "Operation Damages" and "Production Damages".

---

[61] *Dowling Supply & Equip., Inc. v. City of Anchorage*, 490 P.2d 907, 909 (Alaska 1971); *see also, e.g.*, *Native Alaskan Reclamation & Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211, 1222–23 (Alaska 1984) ("Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." (quoting Restatement (Second) of Conts. § 352 (Am. L. Inst. 1981))).

[62] *See, e.g.*, *Guard v. R & R Enters., Inc.*, 631 P.2d 1068, 1071–72 (Alaska 1981) (applying rule to consequential damages); *Nat'l Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 589–90, 590 n.48 (Alaska 1976) (applying rule to direct damages).

[63] Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 18 of 21

Thus, HDJV's "Overhead @ 10%" would appear to represent 10 percent of its costs under those provisions. To the extent the underlying costs are "direct material and labor costs" that HDJV incurred to correct TAKRAF's alleged non-compliance with the terms of the contract, HDJV may recover 10 percent of those costs under the backcharge provision regardless of the Purchase Order's consequential damages exclusion, provided HDJV adequately establishes them at trial.

Second, HDJV's "Potential UAF Costs" also appear to be recoverable. These costs apparently represent outlays that HDJV projects it will need to make the System acceptable to UAF.[64]   As such, the "Potential UAF Costs" would appear to be an estimation of future "direct material and labor costs" HDJV predicts it will incur "to correct [TAKRAF]'s non-compliance with the Purchase Order," in accordance with the Backcharge Procedure. These "Potential UAF Costs" would therefore appear to be directly recoverable for breach of the contract, provided HDJV adequately establishes them at trial.

Third, however, HDJV's "Bond 1.5%" costs are barred under the contract. The Backcharge Procedure does not mention bonding costs. Rather, it only mentions "administration, overhead and profit."[65]  On the one hand, if the parties intended "overhead" to include bond costs, then HDJV's "Overhead @10%" costs

---

[64] *See* Docket 38-3 at 3.

[65] *See* Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 19 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 19 of 21

would include its increased bond costs. A separate recovery for them under "Bond 1.5%" would be duplicative of the "Overhead @ 10%" costs. On the other hand, if "overhead" was not meant to include increased bond costs, the bond costs would appear to be consequential damages that are not recoverable under the Purchase Order.[66] Therefore, the Court concludes that the Purchase Order bars recovery for the "Bond 1.5%" costs listed in HDJV's damages spreadsheet.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Purchase Order's consequential damages exclusion does not bar HDJV from recovering its "direct material and [non-overtime] labor costs" incurred in correcting TAKRAF's non-self-corrected non-compliance with the contract's specifications, as well as a 10 percent additional amount for "administration, overhead and profit." Nor does the consequential damages exclusion bar HDJV from recovering its "Potential UAF Costs." Defendants' motion for partial summary judgment at Docket 36 is therefore GRANTED IN PART with respect to:

- All portions of HDJV's "Operation Damages" that do not represent "direct material and [non-overtime] labor costs" incurred in physically

---

[66] At least one court has held that a contractor's increased bonding costs caused by another party's breach of contract are direct damages. *See Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985). But in the present case, by stating that "[i]n no case shall [TAKRAF] be liable for . . . special, indirect, or consequential damages" immediately after providing for recovery of "direct material and labor costs" and an additional 10 percent for "administration, overhead and profit," the Backcharge Procedure suggests that the parties intended the Purchase Order to limit HDJV's possible recovery to those enumerated costs and expenses. *See* Docket 48-4 at 3, ¶ 6.

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al.*
Order on Defs.' Mot. for Partial Summ. J.
Page 20 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 20 of 21

correcting aspects of the Material Handling System that allegedly failed to meet required specifications;

- HDJV's "Profit Damages"; and

- The "Bond 1.5%" portion of HDJV's "Potential Future Costs."

Defendants' motion is DENIED IN PART with respect to HDJV's other claimed damages.

IT IS SO ORDERED.

DATED this 28th day of October, 2022, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00234-SLG, *Haskell/Davis J.V. v. TAKRAF USA, Inc., et al*.
Order on Defs.' Mot. for Partial Summ. J.
Page 21 of 21

Case 3:20-cv-00234-SLG   Document 69   Filed 10/28/22   Page 21 of 21